Dorothy W. Coleman v. Commissioner.
Dorothy W. Coleman v. Commissioner
Docket No. 16775.
United States Tax Court
1949 Tax Ct. Memo LEXIS 144; 8 T.C.M. (CCH) 616; T.C.M. (RIA) 49164; June 24, 1949
*144 Joseph Hartman, Esq., Clark Bldg., Jacksonville, Fla., for the petitioner. F. L. Van Haaften, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income and victory taxes for the year ended December 31, 1943, in the amount of $3,386.58, and income taxes for the years ended December 31, 1944, and 1945, in the amounts of $4,222.61 and $7,301.90, respectively. The principal issue is whether the income of an alleged partnership consisting of petitioner and her husband is taxable in its entirety to petitioner or whether the income is to be divided equally between petitioner and her husband. Other issues for decision are whether Commissioner erred in disallowing: (1) traveling expenses in the amount of $75 for the year ended December 31, 1943, and (2) traveling expenses in the amount of $1,302.45 for the year ended December 31, 1944. The returns in question were filed with the collector for the district of Florida. Findings of Fact Petitioner is Dorothy W. Coleman. In 1926 she moved to Jacksonville, Florida, and opened a dress shop, known as the "Frances Marion Shoppe" with her future *145 sister-in-law, Olivia Coleman. It was an exclusive dress shop, which bought and sold ready-to-wear women's clothes and accessories. In 1930, this business was transferred to a corporation known as Frances Marion Shop, Inc. Ninety-nine shares of the stock of this company were issued in the name of Olivia Coleman, one share was issued to a Phillip Coleman, and one hundred shares to petitioner. Petitioner married R. Lester Coleman in 1931. At or about that time Lester began to participate in the business of the corporation. In 1932 he negotiated a lease on its behalf. In the same year he opened a shoe shop on the same premises which he operated as a department of the dress shop. In 1933 petitioner and her husband bought out the interest of Olivia Coleman. The purchase price was paid from accumulated earnings of the business and from funds borrowed from the bank on the signatures of petitioner and her husband. Money was secured in similar fashion for the operation of the business. Lester Coleman took the place of Olivia Coleman in the business. In 1934 the ninety-nine shares of Olivia Coleman were surrendered and reissued, ninety-eight being transferred to petitioner and one share to *146 a Judith Birnkraut. The one share issued to Phillip Coleman was transferred to R. Lester Coleman, petitioner's husband. A son was born to petitioner and her husband in 1936. In 1936, 1937 and 1938, petitioner's husband was in complete charge of the business in Jacksonville during the winters of those years while petitioner was operating a branch store in Miami. This branch was liquidated in 1938 as was the shoe store operated by Lester. The net proceeds derived upon dissolution of both the Miami branch and the shoe store were left in the dress-shop business. Although the husband received offers of backing to open another shoe store, he refused and spent his time with the dress-shop corporation. Neither husband nor wife drew regular salaries from the corporation, preferring instead to leave the earnings in the business. Although the parties at all times had a joint banking account, their drawings to pay personal bills were made on the business account and treated as salaries for income tax purposes. These salaries were reported for tax purposes as follows: Year
Husband
Petitioner
1939
$ 945.87
$2,111.43
1940
2,123.66
1941
4,000.00
1942
1,180.68
3,460.09
1943
838.87
6,000.00
*147 The $4,000 salary reported by the wife in 1941 was credited on the books as belonging one-half to each the husband and wife. In 1942 and 1943 the husband received $2,700 each year from American Cross Arm Company as a buyer of lumber for crossties. This business required little time and was done in the vicinity of Jacksonville at odd hours. In 1943 the corporation was dissolved as of September first and the business was continued as a partnership between Dorothy and Lester Coleman, husband and wife. The written partnership agreement set no salaries but provided that Dorothy Coleman would supply the capital consisting of all of the assets of the former corporation, and Lester Coleman would supply all of his time and undivided efforts to the business of the partnership, in return for which he should receive as compensation one-half of the net profits, and further provided that each partner was to share equally in the partnership's profits and losses. At the time the corporation was dissolved it was indebted to Lester in the sum of $2,500. This amount was contributed by Lester to the business of the new partnership, for which he was credited on his capital account as partner. Sometime *148 later he received $1,300 in payment of an old debt owed to him individually and this amount was also invested by him in the partnership business. Each partner was to have a drawing account. A certificate showing the partnership as doing business under a fictitious name was filed with the county clerk in September of 1943. In the same month a lease covering the premises occupied by the business was taken in the names of "Lester Coleman and Dorothy Wiesen Coleman, trading and doing business as 'Frances Marion Shoppe'!" The purposes for dissolving the corporation were, among others, to avoid book work and taxes, such as intangibles, corporate excise, social security, and corporate income taxes, and to secure the advantages of personal credit ratings. The opening entries in the partnership books credited the capital accounts with $2,500 for the husband and $16,849.30 for the wife. Later, the husband received $1,300 in payment of an old debt owed to him individually, and the proceeds were invested by him in the dress shop business. In 1943 and 1944 the husband of petitioner spent ninety to ninety-five per cent of his time with the business. Although he would not make sales to customers *149 he did all the banking, kept the stock records or perpetual inventory records and other records, hired the help, paid salaries, and fired them. He assisted his wife with the buying and bought by himself; he checked invoices, managed the shop, approved charge accounts, and managed the shop alone while petitioner was absent. He marked clothing, set up window displays, and even acted as porter. Both he and petitioner signed checks and borrowed money. The husband had good taste and a knowledge of the dress business acquired over a period of more than ten years. Throughout the period during which the dress-shop business was carried on the parties drew only the amounts necessary to live on. When the business was dissolved in 1947, the proceeds were deposited in the joint account which the husband and wife had maintained since their marriage in 1931. The selling was done on the first floor. Petitioner spent the majority of her time on the floor dealing with customers. She also managed her home. The shop hired two or three saleswomen and had other employees in the alteration department, in addition to maid service. The offices and stock rooms were in the basement where the husband spent *150 the majority of his time. The hiring of employees was difficult. The husband and wife spent many extra hours with the business, with the exception of a period during 1943, when petitioner spent much of her time with the son, who was ill, and in going to doctors for her own illness. In 1941 the husband had been ill for two or three months. In the latter part of 1944 petitioner's husband acquired a half interest in the Jacksonville Building Material Co. The business was carried on by a manager and a woman, who, for the most part, operated the business. Although the husband spent the majority of his time in 1945 with this company, he still spent many hours with petitioner in the conduct of the business of the partnership. The new concern was on the fiscal year basis. Its return for 1944-1945 stated that Lester Coleman spent all his time in connection therewith as president. He reported income of $1,350 for 1944 and $3,600 for 1945 from this company. During the taxable years in question, the husband and petitioner actually carried on in good faith business as a partnership in which the husband contributed capital and vital services. Opinion KERN, Judge: The principal issue is concerned *151 entirely with whether the partnership existing between petitioner and her husband during the taxable years had such reality that it will be recognized for tax purposes under the various tests enunciated in , , and similar cases. Applying those tests to the facts of the instant case, we have concluded that the partnership composed of petitioner and her husband had reality and should be recognized as such for tax purposes. The remaining issues involve the disallowance of portions of the traveling expenses claimed as deductions during 1943 and 1944. The evidence adduced which bears upon them is inadequate and unsatisfactory, and does not support a conclusion, in the face of respondent's determination, that respondent erred in disallowing them. With respect to these issues, we decide in favor of respondent. Decision will be entered under Rule 50.